Cabell, J.
I concur. It Is not necessary to decide, as a general question, how far the creditor of a debt payable at a future time, is bound, at the request of the surety, to sue out an attachment against the principal. It would seem, however, that the creditor, in this case, admitted her obligation to do so; for she did in fact sue out an attachment, at the request of the surety; and having thus commenced it, she ought to have prosecuted it diligently. This she did not do; for the attachment was, in fact, abandoned.
But there is another and a higher ground on which I place the discharge of the surety. The attachment sued out by the creditor was levied on property abundantly sufficient for the payment of the debt. This levy created a specific lien on that property; and the discharge of this lien by the creditor, without the assent of the surety, was, on general principles of equity, a discharge of the surety. That this is so where the creditor waives the lien of an execution levied, was decided by lord Eldon in Mayhew v. Crickett. And I can perceive no difference in this respect, between the lien of an execution levied, and that of an attachment levied. This court, in the case of Chichester v. Mason, carried the principle still farther; for it was there decided, that the waiver of a general lien on the property of the principal, resting on the mere delivery of an execution to the sheriff, was a discharge of the surety.
Tucker, P.
I am also of opinion, that the decree should be reversed.
By our statute providing remedies for sureties, a surety apprehending loss may require his creditor to proceed against the principal, in case an action has accrued against him. This requisition must be in writing; and upon its being made, the creditor is bound, within a reasonable time, to institute suit and to prosecute it diligently to judgment and execution ; and if he fails to *175 comply, the surety is by law discharged. Now, in the . . . , -ii present case, it is true it may be a question, whether, as the debt was not at the time due, the requisition could have been made by the surety. On the one hand, an attachment may truly be said to be an action; and if there is reason to believe the debtor intends to abscond, the creditor may have this action ; and it is by no means clear, that in this, the case of the greatest exigency, the law did not intend the remedy to the surety. On the other hand, it may well be doubted, whether it ever could have been designed to compel the creditor to institute a proceeding, which he cannot institute unless he himself really believes in the intention to abscond, and by which he renders himself responsible for heavy damages, if his fears should turn out to be groundless. But, be this as it may, mrs. Smith did commence this proceeding upon the requisition of mrs. Ashby; and whether she was bound to do it or not, and whether the request was in writing or not, is now no longer of any importance. Having commenced the process at the surety’s instance, and having attached effects sufficient to secure the debt, she was thenceforth bound, in the language of the statute, to “ proceed with due diligence in the ordinary course of law to recover judgment” and obtain an order of sale. For, having already commenced the proceeding, it would have been a vain thing for the surety, after the debt became due, to make such demand in writing as the statute required; and the rather, as the pendency of this attachment would have been an obstacle to any other proceeding. All that the surety could expect was, a compliance with the statute in the use of due diligence. Has the attachment been prosecuted with due diligence? It cannot be pretended; and the legal consequence is a discharge of the surety.
Decree reversed, and injunction perpetuated.